## JACKSON *v.* STROWGER AUTOMATIC TELEPHONE EXCHANGE.

There was no error in sustaining the demurrer to the plaintiff's petition.

Argued May 30, — Decided August 2, 1899.

Action on contract. Before Judge Callaway. Richmond superior court. April term, 1898.

*W. E. Jackson* and *M. P. Carroll*, for plaintiff.
*Joseph R. Lamar*, for defendant.

Fish, J. It appears from the pleadings in this case that in May, 1895, the plaintiff, J. Hardwick Jackson, entered into negotiations with the defendant company, the Strowger Automatic Telephone Exchange, with a view to purchasing from the company "the exclusive right to use the Strowger automatic switchboard and telephones in the States of Georgia, North Carolina, South Carolina, and Alabama, during the life of the patents" thereon. Under the contract as finally consummated, he was to pay for this privilege $10,000, the first two payments being, respectively, $1,000 and $1,500, and the balance being divided into three equal payments of $2,500 each. This agreement was in its nature purely executory, the company obligating itself to issue to the plaintiff a license for the exclusive use of its patent rights only on condition that he should, within a stipulated period, duly meet the first two payments agreed upon. It was the intention of the plaintiff to organize a company and sell and transfer to it the privilege thus contracted for; but, for various reasons assigned, he was unable to do so, although, in order to assist him in carrying out his design, the defendant extended, from time to time, the period within which he obligated himself to make the two payments necessary to secure the desired license. As a result of this indulgence, the time fixed by the original agreement as that within which compliance on his part with the condition precedent therein named would be accepted by the opposite party was finally extended "until December 24th, 1895." Among other documents attached as exhibits to the plaintiff's petition is one which purports to be the draft of an agreement fixing the terms upon which the company was to furnish him with the mechanical appliances connected with its system, and containing various stipulations as to the royalty to be charged by it, the defense of litigation involving its patent rights, etc., etc. This paper does not, however, bear the signature of either the plaintiff or the defendant, nor, indeed, does it purport to have been executed by any one whomsoever. None of the various other documents attached to the petition, and relied on by the plaintiff as evidencing the contract between himself and the com-

pany, can properly be said to connect this paper therewith, for in not one of them is it identified or recognized as a part of that contract, or even referred to. And not only is this true, but no attempt is made by the plaintiff to explain in his petition upon what possible theory this unsigned instrument can be regarded as having any binding force or effect upon the defendant or any one else. It is to be observed, in this connection, that the contract under consideration was one falling within the operation of the statute of frauds, as it was not one to be performed within a year. Such a contract can not rest partly in writing and partly in parol. *Lester* v. *Heidt*, 86 *Ga.* 226; *Augusta Southern R. Co.* v. *Smith & Kilby Co.*, 106 *Ga.* 864. Accordingly, notwithstanding there may have been a verbal understanding to the effect that this unsigned memorandum should constitute a part of the written contract, such parol agreement, whether made contemporaneously or subsequently, could count for nothing. In considering the questions which this case presents for determination we shall, therefore, entirely disregard the totally irrelevant exhibit just referred to as being attached to the plaintiff's petition.

It would seem that the written contract above outlined is alleged merely by way of inducement, in order to present a history of the transactions between the contracting parties and explain what subsequently occurred. Indeed, the agreement really declared upon is wholly contained in the following correspondence between them: Under date of December 24, 1895, the plaintiff addressed to the company's president a letter, in the course of which he inquired: "Will you allow me to sell the exclusive right for Augusta, and pay you the amount on account of the State rights, and refer parties here to me as to prices on the instruments?" As explaining his purpose in making such request, the writer added: "My reason for asking this favor is, that I have worked up a good local exchange, and can make enough on construction to pay the first two payments to you, viz., $1,000.00 and $1,500.00." In answer to to this inquiry, the company's president replied by letter, dated three days later, as follows: "As per your request, we will allow you to sell the exclusive right for the City of Augusta,

according to conditions outlined in your letter. But we will again call your attention to the fact that time is the essence of all agreements, and trust that you will let us know your pleasure in the matter at your earliest opportunity." So far as appears, no further correspondence was had with reference to this matter until September 2, 1896. On that date Jackson wrote the company's president: "We will commence work here next week and will send in our order for 300 'phones. . . As soon as I get this exchange up, I shall push things lively for you. Mr. Langdon contemplates visiting you with the purpose of making better arrangements than I have offered. I want to ask you to simply refer him to me, as I have complied with your instructions, and if we make an exception in this case, it will have to be done in others. Of course, this is confidential. . . Langdon's arrangements with me are a duplicate of license to me, except the royalty is $4.00 instead of $2.50." The addressee of this communication replied: "We have yours of recent date, and are now awaiting your order. We shall also carry out your instruction in reference to Mr. Langdon." In this connection, the plaintiff alleges in his petition "that, relying upon the promises and agreement of defendant, as appear" from the correspondence above set forth, "he organized a company at Augusta, Georgia, and secured the co-operation and capital of Paul D. Langdon, and others, who subscribed to the stock and bonds of said local company, which said local company erected a switchboard and all equipments and placed the same in successful operation at Augusta, Georgia, with about two hundred and fifty telephones of the Strowger Automatic Telephone Exchange system"; that "for the right to use the switchboard said local company was to pay the sum of $4.00 to the Strowger Automatic Telephone Exchange" for every telephone connected therewith, "for each and every year during the life of the patent or any extension thereof"; that under the aforesaid contract between plaintiff and the defendant company, he was entitled to $4.00 per annum for each of these telephones; that said company was under the obligation of accounting for and turning over to him "the first year's royalty or rental of $4.00 on each telephone switch, and $1.50 of said royalty or

rental for each year thereafter, . . all of which undertakings and agreements defendant has violated and totally failed and refused to do"; and furthermore, "that under the aforesaid contract between plaintiff and defendant, he is entitled to a profit of $5.00 on each telephone established, or sold, in the city of Augusta, Georgia, and at the time of the institution of this suit there had been established 327 telephones and 327 switches." It was further averred "that the conduct of defendant in openly denying the existence of said contract is an attempt to take advantage of all the time and labor expended by plaintiff in successfully establishing" this local exchange in Augusta. Attached to the petition is the following statement of the indebtedness which the plaintiff alleges arose in the manner just recited:

"The Strowger Automatic Telephone Exchange, to J. Hardwick Jackson, Dr.:

To royalty on 327 switches at $4........................$1,308 00
To profit on 327 telephones at $5........................ 1,635 00

                                                         $2,943 00

"Telephones were billed at $21.00 each in Chicago, Ill."

Such is the case made out by the plaintiff's pleadings. In the first place, it is to be observed that he does not undertake to allege that he duly performed, or offered to perform, his part of the alleged contract. On the contrary, it would seem, from his letter of September 2, that Langdon, the capitalist with whom he was negotiating, declined to accept the terms offered by him, and contemplated visiting the defendant company at Chicago "with the purpose of making better arrangements than [the plaintiff had] offered." On the argument here, however, counsel who appeared in his behalf insisted that: "The answer to this is that he organized a company, obtained licenses from the city to erect poles, and obtained subscribers to stock for the local company and to telephones, and procured capitalists to take hold of the matter; brought P. D. Langdon, a capitalist, in touch with the defendant under a promise from the defendant that all arrangements for prices of telephones, etc., should be referred to plaintiff, and from such

arrangements plaintiff was to have certain profits and royalties in order to pay for the patent rights for the States named above; but that the defendant, when once in touch with Langdon, the capitalist, threw plaintiff overboard, as it were, and prevented him from reaping the benefits of his contract. He did make the sale, and made it through Langdon, and . . if the sale was not perfected by plaintiff as agreed upon, the failure was caused by the defendant; which is equivalent to a breach." We, of course, fully recognize that the doctrine thus sought to be invoked is both sound and just. See 3 Am. & Eng. Enc. L. (1st ed.) 903, 907. But, under the facts alleged, it really has no application to the present case. The plaintiff does not even unequivocally aver that the defendant company made a sale to Langdon; and certainly, if it in fact did so, the allegations of the petition fall far short of showing that the company acted in bad faith or that the plaintiff was thereby prevented from himself making such sale. It is also to be noted that, in granting the plaintiff's request made in his letter of December 24, the company expressly qualified its assent to his proposition by the statement that "time is the essence of all agreements." Clearly, therefore, he was granted only "a reasonable time" within which to perfect the contemplated sale, as no exact period was definitely fixed as to the duration of the arrangement agreed upon. Up to September 2 of the following year, he had failed to find a purchaser, Langdon having declined to accept his terms. The date upon which the company perfected a sale to Langdon (if it in fact did so) is not alleged, but it was clearly some time after September 11, the date of its last letter to the plaintiff. Can it be fairly said that the plaintiff was not given "a reasonable time" within which to find a purchaser desiring "the exclusive right for Augusta"? All the plaintiff asked of the company was to be allowed to sell this privilege. What consideration was there for the company's promise to allow him to do so? In plain English, his proposition was: I will pay you "the amount on account of the State rights," which I am already bound by my original contract to pay in any event, if you will allow me to anticipate the rights and privileges to which, upon compliance on my part with the terms of that contract, I will

be entitled.  As the company had theretofore made a contract with him under the terms of which he was legally bound to pay for the exclusive right to use its telephone system in the State of Georgia, it could not possibly be in any legal sense benefited by permitting him to sell, at a profit to himself alone, "the exclusive right for Augusta," on condition that he would settle for a debt he already was under express obligation to pay "on account of the State rights."  The mere fact that in his letter the plaintiff also requested the company to "refer" to him Augusta parties "as to prices on the instruments," will not suffice to sustain the plaintiff's contention that it was contemplated by himself and the company that he should organize and equip a local exchange, purchase from the company the necessary telephones at a profit to himself of $5.00 on each instrument, and receive the whole royalty thereon for the first year.  If any such understanding existed at all, it was wholly in parol.  None of the terms of the alleged agreement are set forth in the correspondence between the parties.

True, it is perhaps inferable therefrom that some sort of an understanding in regard to the furnishing of instruments to be used in the local exchange at Augusta was had between the plaintiff and the company; but this fact simply serves to show that the whole contract was not reduced to writing.  As above remarked, a contract which the law requires to be in writing can not rest partly in writing and partly in parol.  See authorities hereinbefore cited.  Undoubtedly, the contract set up in the present case was one falling clearly within the terms of the statute of frauds, as not only embracing the sale of over three hundred machines "billed at $21.00 each in Chicago, Ill.," but also as comprehending the payment of an annual royalty for the use thereof during the life of the patents covering the same.  This being so, and the writings specifically declared upon not embracing any of the terms of the alleged contract, but at most being no more than mere memoranda thereof, the plaintiff can not successfully rely upon the same as the basis of his alleged cause of action.  Had he undertaken to aver and declare upon a parol contract to the effect above indicated, specifically setting forth facts showing such partial performance

on his part as would take the contract without the operation of the statute, an entirely different question would be presented. In that event, the letters written by the company in reply to those addressed to it by the plaintiff might prove valuable evidence in his favor, upon the idea that they amounted to admissions on the part of the company that it had entered into some kind of an agreement of the character of that averred. But, taken by themselves, or read in the light of the entire correspondence between the parties, these letters do not evidence a contract in writing sufficiently full and complete in its terms to be capable of enforcement in a court of justice. Although the plaintiff does not undertake to declare upon the original contract whereby he sought to purchase the exclusive right to use the company's patented telephone system in the four States above mentioned, it may properly be remarked, in conclusion, that no breach of that contract is shown by the facts disclosed in the record before us. In the first place, the plaintiff does not aver that he ever tendered to the company, at any time, the payments which the company expressly stipulated he should make before a license should be granted him. Under the allegations of his petition, the time within which he was to comply with this condition precedent was extended only to December 24, 1895. Therefore, while the company may, by selling to the Augusta local exchange the right to use its system in that city, have placed it beyond its power to thereafter grant an exclusive license covering the entire State of Georgia, no breach of its original contract with the plaintiff thereby necessarily resulted. The sale by it just referred to was made subsequently to September 2, 1896, and as the plaintiff does not claim that this contract was extended and kept in force beyond the 24th of December of the previous year, it is not even inferable that at the date of such sale the company was under any obligation to grant the plaintiff a license upon tender by him of the price he had agreed to pay for the State rights. On the contrary, it would seem that he had himself previously committed a breach of this contract, and the company was entirely at liberty to treat the same as rescinded and at an end, if it did not choose to hold the plaintiff to his

contract and endeavor to recover damages for his breach of the same. In the most favorable and liberal view which can possibly be taken of the plaintiff's petition, the conclusion is irresistible that no cause of action whatsoever is therein set forth ; and it follows that the trial court properly dismissed the same on demurrer. *Judgment affirmed. All the Justices concurring.*