GREAT AMERICAN INDEMNITY COMPANY
*v.* HORKAN *et al.*

452

No. 16899.   January 12, 1950.   Rehearing denied February 17, 1950.

*Hoyt H. Whelchel,* for plaintiff in error.

*Bivins & Bivins, Gibson & DeLoache, Robert E. Cheshire, P. C. Andrews, W. B. Withers, William H. Riddlespurger,* and *Sam J. Gardner Jr.,* contra.

CANDLER, Justice. (After stating the foregoing facts.) The plaintiff in error, Great American Indemnity Company, insists that there is only one question to be determined—whether or not the petition as amended is sufficient to set out a cause of action against it, in view of the demurrers urging the invalidity of the bond because of the provisions of the statute of frauds that a promise to answer for the default or miscarriage of another must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized. Code, § 20-401 (2). Admitting that the bond itself is in writing and signed, it is nevertheless argued that recitals and conditions therein expressed require a written contract between the contractor (who is the principal in the bond) and the obligees thereof. In this connection it is urged that the required writing is not attached, nor is the right to have it attached shown by the original petition or as amended. The initial portion of the bond is as follows: "Know All Men By These Presents: That George H. Miller of Moultrie, State of Georgia, hereinafter called the Principal, and the Great American Indemnity Company, hereinafter called the Surety, are held and firmly bound unto Mr. and Mrs. G. A. Horkan of Moultrie, State of Georgia, hereinafter called the Obligee, in the sum of Thirty Thousand and No/100 ($30,000.00) dollars; for the payment whereof to the Obligee the Principal bind _____, heirs, executors, administrators, successors, and assigns, and the Surety binds itself, its successors and assigns, firmly by these presents. Signed, sealed and dated this 6th day of May, 1948. Whereas the Principal and the Obligee have entered into a written contract, hereinafter called the Contract, for building a residence on Thomasville-Moultrie Highway, dated the 9th day of April, 1948, a copy of which is attached hereto: Now Therefore, the condition of the foregoing is such that, if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with any of the terms of the contract, then this obligation shall be void; otherwise it shall remain in full force." Then following are express

conditions usual to the form of bond, and the same, briefly summarized, are: 1. The obligee shall give immediate written notice to the Surety of any act or omission involving loss. 2. If the Principal fails to comply, the Surety shall have the right to assume the remainder of the contract and at its option perform or sublet the same. 3. In the event of breach of the contract, the Surety shall be subrogated to rights and properties of the Principal arising out of the contract. 4. Legal proceedings shall be begun within twelve months from discovery of breach, but to be extended twelve months if the Surety shall assume performance. 5. The Principal shall be made a party to any suit to recover, and no judgment shall be rendered against the Surety in excess of the penalty of the instrument. 6. The Surety shall not be liable for damages from strikes and other named things. 7. No change shall be made in the plans and specifications forming a part of the contract that shall increase the amount to be paid to the Principal more than ten percent of the penalty of the instrument, unless the Surety's consent thereto shall be secured in writing. 8. The obligee shall retain such portion as the contract specifies (but not in any event less than ten percent of such value) until the Principal has completely performed. 9. A right of action is limited to the obligee. Then, following the witness clause, appear the signatures: George Miller, Principal, Great American Indemnity Company By Gladys Lyon, Attorney-in-fact.

The defendants in error concede that no written contract between the contractor (Principal) and the obligees was alleged by the original petition to have been attached to the bond. Nevertheless they rely on the instruments and steps set out in the petition as amended as sufficient to show compliance in any view of the character of the undertaking. Further, the defendants in error say that reformation, sought by the amendment to the petition to establish exhibit "F" as a part of the bond, coupled with a tie-in of plans and specifications identifiable by parol, makes it a complete obligation. Exhibit "F" is captioned "George Miller Contractor," followed by the date "April 9, 1948," and the instrument begins in the body with the words, "Specifications to be added to House to be built for G. A. Horkan, Moultrie, Georgia, on Thomasville Highway"; then it describes various

items of construction and equipment in paragraphs numbered 1 through 14. Next it reads: "15. Payments to be as follows: A payment of $3000 cash, the balance to be paid as work progresses. 16. Total of contract to be $29,950. 17. Shower over each tub upstairs. /s/ G. A. Horkan, Owner, /s/ George Miller, Contractor." Exhibit "E" is headed "Holland's The Magazine of the South Home Building Service, Century Building, Fort Worth, Texas, Specifications for Holland's Plan No. 2032-C C. O. Chromaster, Architect, 401 Century Building, Fort Worth, Texas"; and there follow in the body of the instrument typewritten specifications, consisting of approximately fifteen pages, covering details of construction and near the end it reads: "Conclusion: The successful contractor must furnish the owner with a satisfactory guarantee, either by a responsible lumber yard or by a Surety Bond, that he is financially able to, and will, complete the contract according to plans and specifications, and that all bills for labor and materials will be paid." Exhibit "D" consists of blueprints of plans for the construction of a residence, bearing the legend "Holland's No. 2032-C. C. O. Chromaster, Architect." Exhibit "C" is entitled "Specifications of the particulars in which the Contractor George H. Miller failed to fully perform the contract between him and G. A. Horkan for the construction of the latter's home in Lot 15, Block 'F', Colonial Heights"; following which approximately three typewritten pages detail the alleged failure. Exhibit "B" recites: "We hereby agree that the statement below is the correct agreed price and actual cost of additions and alterations made in the construction and completion of the dwelling in which Mr. & Mrs. G. A. Horkan now reside just South of the City of Moultrie, Georgia"; and items numbered 1 through 19 are described and stated as to amount showing a total of $1562.90, and signatures follow: G. H. Miller, G. A. Horkan.

The recital in the bond (exhibit "A"), which refers to "the contract, for building a residence on Thomasville-Moultrie Highway, dated the 9th day of April, 1948," when compared with exhibit "F" bearing the same last-mentioned date, setting out "Specifications to be added to House to be built for G. A. Horkan, Moultrie, Georgia," and containing stipulations of the total contract-price, not only for the added specifications, but also

for the whole job, stating method of payment, and containing signatures of the owner's alleged agent and the contractor, cannot be brushed aside as having no connection, especially in view of the allegation of the amendment, that "Great American Indemnity Company" was furnished with a copy of said exhibit "F" prior to the execution and delivery of the said bond. When analyzed, exhibit "F" shows on its face that it is the modification or enlargement of some other existing plans and specifications, which are inferentially referred to in sufficient manner to furnish a key. These other existing plans (exhibit "C") and specifications (exhibit "D") are sought to be shown by identification in parol, and the defendants in error contend that this can be done in any view of the law as to whether the statute of frauds is applicable or not. If there was a mistake of the parties in failing to attach exhibit "F", the amendment and prayer to reform the bond to such an extent as to make it speak the intention of the parties is an available remedy.

The other phase of the question is, whether or not identification of the unsigned plans and specifications can be supplied by parol. In 73 A.L.R. 1383, in connection with several cases considered, there is a discussion of the extent to which parol evidence is admissible to identify a writing referred to in another signed writing so as to meet the requirements of the statute of frauds, and in a summary it is said: "The general statement is sometimes made that, where several documents are relied upon as constituting a memorandum satisfying the statute of frauds, oral evidence may not be relied upon to connect documents; but that rule appears to have little force as applied to a written agreement signed by the parties, or by the party, to be charged, wherein reference is made to an extrinsic writing. In such case it appears that the two documents may be regarded as satisfying the statute, even though oral evidence be relied upon to further identify the writing referred to." Going even further, is the case of Forst v. Leonard, 112 Ala. 296 (20 So. 587), which involved a suit upon a bond given to secure the performance of a building contract, the bond referring to the contract as one "to build a one-story frame dwelling"; and it was held that "either under the statute of frauds, or in view of the inquiry whether the bond and contract for any purpose, are to be read together," it was

not essential for the bond to set out the terms and specifications of the contract to build the dwelling. Further in said case the Alabama court said: "the only remaining question arising in this case is whether the reference in the bond . . is sufficient in itself, or as added by admissible parol evidence, to make the contract set out in the complaint part and parcel of the bond. . . We do not understand it to have ever been the law that parol evidence was inadmissible under these circumstances for this purpose. Without such evidence the whole contract is existent and evidenced by writing. The oral evidence does not add to or take away a single term to or from it. But merely by clearing away an ambiguity or uncertainty in the reference of one part of this wholly written contract to another, such evidence brings the separated parts together. But if the rule were ever otherwise, it is not so either here or in England at the present time. To the contrary, it is thoroughly well established, there and here, that where a contract, required to be in writing by the statute of frauds, rests upon the contents of two separate papers, and the only thing lacking to a compliance with that statute is the identification of the two papers in their relation to each other, that identification may be supplied by oral evidence." This case was cited and the quotation used in the more recently decided case of Fidelity & Casualty Co. of N. Y. v. Raborn (1937) 234 Ala. 31 (173 So. 402 (6)). See also Central Shoe Co. v. J. P. Cohn Co. 160 Miss. 151 (133 So. 126). An Indiana case, Foltz v. Evans, 113 Ind. App. 596 (49 N. E. 2d, 358), had under consideration a contract for the sale of land, which contained a condition that the house must be "completed upstairs and a two-car garage (erected?) according to plans and specifications." It was contended that the quoted condition was not a part of the typewritten contract because of indefinite reference to "plans and specifications." After reviewing several cases on the subject and citing the note in 85 A.L.R. at page 1184, the Indiana court said: "It therefore appears that, while parol evidence is not generally admissible to show the connection between the signed and unsigned, it is admissible to identify unsigned writings referred to in the signed writing." Although this court is not bound by decisions of courts of other States, when the reasoning seems sound as it does in the cited cases we are persuaded to

follow the same principle, where none of the cases cited by counsel or found in our search of the decisions of this State demands a different rule.

Because of the difference in facts, we do not think that the attempt to show the completed obligation in the manner set up in the petition as amended in this case is contrary to anything ruled in *Brown-Randolph Co.* v. *Gude,* 151 *Ga.* 281 (106 S. E. 161), where it was recognized that "A building contract, to be valid, must have the necessary element of certainty, just as other contracts. Such a contract may be made sufficiently certain by reference to other documents, or to plans and specifications. But each reference must be sufficient to identify the documents or plans to which the reference is made." The facts alleged in the present case are distinguishable also from those in the cases of *F. & W. Grand Stores* v. *Eiseman,* 160 *Ga.* 321 (127 S. E. 872); *Jackson* v. *Strowger Automatic Tel. Exchange,* 108 *Ga.* 646, 647 (34 S. E. 207); and others cited by counsel for the plaintiff in error.

It is our conclusion that the amended petition is not subject to the objections raised by the demurrers and that there was no error in the judgment of the court below, overruling the same.

*Judgment affirmed. All the Justices concur.*