32903.  SOUTHEASTERN CONSTRUCTION CO., for use of
GILL EQUIPMENT CO., *v.* GLENS FALLS
INDEMNITY CO.

DECIDED MAY 5, 1950.  REHEARING DENIED JUNE 14, 1950.

*MacDougald, Troutman, Sams & Schroder, Gilmer A. Mac-Dougald,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy,* for defendant.

FELTON, J. 1. The bond sued on is dated October 30, 1947. It guarantees the performance of a subcontract dated October 29, 1947, whereas the subcontract alleged to have been guaran-

teed by the bond was dated October 10, 1947, and refers to the prime contract dated October 29, 1947 and makes the prime contract a part of the subcontract. The allegations of the petition are accepted as true on demurrer. Under the allegations of the petition the inference is demanded that the bond sued on was given to guarantee the performance of the subcontract dated October 10, 1947, whether there was a mistake in dating or whether it antedated the prime contract of October 29, 1947. Whether the bond actually covered the subcontract dated October 10, 1947 is a matter of evidence showing the intention of the parties. As against a general demurrer the allegations are sufficient to allege that the bond covered the subcontract dated October 10, 1947. See *Great American Indemnity Co. of N. Y.* v. *Horkan,* 206 *Ga.* 451 (57 S. E. 2d, 487).

2. The principal question involved is whether the obligation in the bond sued on runs not only to the sole express obligee, to wit, Southeastern Construction Company, but also to materialmen and laborers furnishing material or labor for the completion of the subcontract. The obligation of the bond is that the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract, meaning the subcontract, which is made a part of the bond. The bond, the contract attached thereto, and the parts of the contract between the owner and the principal contractor to which the contract attached to the bond referred, must be construed together. *McArthor* v. *McGilvray,* 1 *Ga. App.* 643 (57 S. E. 1058) ; *Pittsburgh Plate Glass Company* v. *American Surety Co. of N. Y.,* 66 *Ga. App.* 805 (19 S. E. 2d, 357). The subcontractor agreed to furnish the contractor with a "payment and completion bond" in the full amount of the contract. It seems to us that the provisions in the subcontract to the effect that the prime contract should become a part of the subcontract and that the subcontractor agreed to assume toward the contractor all the obligations and responsibilities that the contractor, by those documents, assumed toward the owner have the effect of making articles 9 and 30 of the prime contract a part of the subcontract and a part of the bond to the extent of the subcontractor's obligations. The bond guarantees that the contract will be performed, so the obligations of the contract determine the mean-

ing of the bond. Construed together the prime contract and the subcontract obligate the subcontractor to *furnish* and *pay for* the labor and materials necessary to complete the subcontract. There is a conflict of authority on the question whether the mere agreement to furnish labor and materials would give materialmen or laborers a right to sue on a bond not specifically indemnifying them, but the weight of authority seems to be that where the contract provides that the labor and material are to be *furnished and paid for* by the contractor, and the bond is a performance bond, laborers and materialmen may maintain an action on the bond. In the case of *Fidelity & Deposit Co. of Maryland* v. *Pittman*, 52 *Ga. App.* 399 (183 S. E. 572), this court held the bond to run to laborers and materialmen. The bond was a performance and indemnifying bond but contained a further provision that the contractor "shall pay all persons who have contracts directly with the principal (the subcontractor) for labor or materials." *Union Indemnity Co.* v. *Riley*, 169 *Ga.* 229 (150 S. E. 216) is to the same effect. It seems to us that these cases control this case in principle. A performance bond guaranteeing performance of a contract agreeing to furnish and pay for labor and materials as effectively runs to laborers and materialmen as does a bond indemnifying a named obligee against loss and also guaranteeing that the contractor would pay laborers and materialmen, especially if it is a bond complying with a contract to furnish a payment bond, which could have but one purpose and that is to guarantee the payment of laborers and materialmen. We can see no distinction between an agreement to furnish and pay for labor and materials and one agreeing to pay laborers and materialmen for the labor and material they furnish. Payment could only be made to the ones who furnished the labor and materials. We have not been cited nor have we found a Georgia case directly in point. The following cases from other jurisdictions are substantially in accord with the foregoing reasoning, though there may be others to the contrary: Orinoco Bldg. Supply Co. *v.* Shaw Bros. Lumber Co., 160 N. C. 428 (76 S. E. 273, 42 L.R.A. (N.S.) 707); Greenfield Lumber & Ice Co. *v.* Parker, 159 Ind. 571 (66 N. E. 747); Knight & Jillson Co. *v.* Castle, 172 Ind. 97 (87 N.E. 976); Pennsylvania Supply Co. *v.* National Casualty Co., 152 Pa.

Super. 217 (31 Atl. 2d, 453) ; Pacific States Electric Co. *v.* U.S.F. & G., 109 Cal. 691 (293 Pac. 812) ; Bristol Steel & Iron Wks. *v.* Plank, 163 Va. 819 (178 S. E. 58) ; 77 A.L.R. 21; 118 A.L.R. 57.

To come to this conclusion is not to give a liberal construction to the suretyship contract. We arrive at the construction by a common sense and logical consideration of the plain meaning and terms of the bond and contracts which form a part of it. The bond and contracts in this case mean the same thing as those in the two Georgia cases first cited on this question, the *Pittman* and *Riley* cases. Defendant in error insists that the following Georgia cases are controlling: *American Surety Co.* v. *Small Quarries,* 157 *Ga.* 33 (120 S. E. 617), *American Surety Co.* v. *Bibb County,* 162 *Ga.* 388 (134 S. E. 100), *Ætna Casualty & Ins. Co.* v. *Leathers,* 33 *Ga. App.* 444 (126 S. E. 881), *United States Supply Co.* v. *U.S.F. & G. Co.,* 32 *Ga. App.* 472 (123 S. E. 907), *Mass. Bonding Co.* v. *Hoffman,* 34 *Ga. App.* 565 (130 S. E. 375), and *Durden* v. *American Surety Co.,* 40 *Ga. App.* 705 (151 S. E. 408). The answer to this contention is that the court in *American Surety Co.* v. *Bibb County,* supra, construed the bond in that case as one *indemnifying the named obligee from certain losses,* and *one* of those losses was "for the payment, as they become due, of all just claims for . . materials furnished by persons under and for the purpose of said contract." The court held that such an obligation ran to the obligee alone. There was no obligation in that case either in the contract or bond obligating the contractor to furnish and pay for labor and materials so as to make the bond cover a breach of such an obligation, as in the instant case. To state the matter another way, in the *Bibb County* case the court treated the provision relative to payments for labor and material as an integral part of the agreement to indemnify the obligee against loss and did not treat such provision as a *separate undertaking* of the surety. This covers all the cases relied on by the defendant in error except that of *Durden* v. *American Surety Co.,* supra, which is contrary to *Union Indemnity Co.* v. *Riley,* supra. The bond in the instant case undertakes to guarantee performance of the contracts referred to therein, which includes the obligation to pay laborers and materialmen, and runs to them as well as to the named obligee. If such was not the intention of

the surety ·it would be very easy to so provide in the bond as was done in *Mass. Bonding Co.* v. *Hoffman*, 34 *Ga. App.* 565 (supra), and *Hannah* v. *Lovelace-Young Lumber Co.*, 159 *Ga.* 856 (127 S. E. 225).

The court erred in sustaining the general demurrer to the petition.

*Judgment reversed.* *Sutton, C.J., MacIntyre, P.J., and Gardner, Townsend, and Worrill, JJ., concur.*